| | | |
|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | AUSA: Alyse Wu<br>Agent: Bradley Cioma | Telephone: (313) 226-9600<br>Telephone: (313) 919-1454 |

# UNITED STATES DISTRICT COURT
for the
## Eastern District of Michigan

United States of America

  v.

Robert James HARPER

Case: 2:21-mj-30312
Judge: Unassigned
Filed: 06-25-2021 At 10:37 AM
CMP USA v HARPER (kcm)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ June 23, 2021 _____ in the county of _____ Wayne _____ in the _____ Eastern _____ District of _____ Michigan SD _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), | Possession with Intent to Distribute Controlled Substances. |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT

☐ Continued on the attached sheet.

_____
Complainant's signature

Bradley Cioma, Special Agent, FBI
_____
Printed name and title

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __June 25, 2021_____

_____
Judge's signature

City and state: __Detroit, Michigan_____

Hon. Curtis Ivy, Jr., United States Magistrate Judge
_____
Printed name and title

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Bradley Cioma, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Special Agent with the FBI, and have been since May of 2017. I am assigned currently to the FBI Detroit Division's Strike Force Group 1. Prior to working at the FBI, I was a police officer for six years in Plymouth Township, Michigan. I have participated in training related to and conducted dozens of investigations of federal and state violations, including crimes of violence, firearms, and drug trafficking.

2.      The statements contained in this Affidavit are based on my experience as a special agent, information provided by police officers, other agents of the FBI, and other law enforcement personnel, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through training and experience.

3.      The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all the information known to law enforcement related to this investigation.

## Probable Cause

4.      I am currently investigating Robert James HARPER, date of birth xx/xx/1972, for a violations of federal law, specifically, 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute Controlled Substances.

5.      On June 23, 2021, detectives from the Michigan State Police were observing the public areas of the Greyhound bus station in Detroit, Michigan. At approximately 4:30 pm, a male (later identified as HARPER) entered the bus station and sat in a seat in the waiting area.  The male had no luggage with him; however, he had a plastic grocery bag with what appeared to be a food platter inside of it. After the bus was open to load, the male entered the bus.  This bus was destined for Ohio and its final destination was New York.  Earlier in the day, HARPER was observed by the officers entering the bus station and purchasing a ticket. HARPER then left the station and was observed sitting as a passenger in a rental car with another male that appeared to be of similar age.  Most passengers travel with luggage, and HARPER had no luggage and was traveling out of state; in my training and experience, this is often a trait of narcotics smugglers who carry narcotics on their person.

6.      A few minutes after HARPER boarded the bus, Detectives boarded as well to look for suspicious behaviors and to speak with HARPER. HARPER was observed sitting almost to the very rear of the bus on the driver's side.  When

Detectives first entered the bus, it appeared as if HARPER's head was turned looking outside the passenger window of the bus—towards the side of the bus where the Detectives had congregated before boarding. As Detectives walked down the aisle of the bus (wearing full uniform), HARPER was looking down and not looking towards the Detectives, which they believed to indicate an effort to avoid eye contact and conversation with them.

7.      Detectives walked over to HARPER and began a conversation with him. They asked him about his day and asked where he was heading. The conversation was friendly, and they did not tell HARPER that he was required to speak with them nor that he was prohibited from leaving the bus. When Detectives spoke with him, HARPER appeared nervous, and his voice was shaky. HARPER stated he was heading to Cleveland and was going home to Akron, Ohio. He stated that he lives in Ohio and came to Detroit yesterday. HARPER was asked what brought him to Detroit, and after a delay, he stated that it was to visit his Aunt. HARPER was asked who he stayed with, and he again hesitated before stating that he stayed with his nephew. HAPRER was asked where his nephew lives, and he hesitated before stating "off of Balfour." As the Detectives spoke with him, they observed sweat forming and increasing on HARPER's bald head. HARPER was asked if he had a bus ticket, and he reached into his front left pants pocket to pull it out, when he did, he pulled out a small empty baggie that Detectives recognized as

one that would typically contain marijuana and then frantically reinserted it into his pocket.  HARPER showed the Detectives a paper ticket with the name of MARK JACKSON on it.  HARPER was asked if he could show the Detectives his ID, and he presented an Ohio ID card identifying him ROBERT J HARPER.  HARPER was asked why the name on the ticket was different than his name and he advised "that's just the name I give."  HARPER was asked what he does for work, and he stated that he is currently out of work.  HARPER had two phones in his possession as well.  At one point, Detectives observed HARPER's hands shaking while he operated one of his phones.

8.      HARPER's behaviors made Detectives very suspicious that he was involved in narcotics trafficking.  Detectives ran HARPER's name in the Law Enforcement Information Network (LEIN) and found he had multiple previous drug trafficking charges.  HARPER was asked if he was ever arrested in the past and he told Detectives years ago he had a possession charge, downplaying his history and omitting mention of his most recent arrests.  In my training and experience, it is common for narcotics traffickers to downplay any previous narcotics trafficking charges in an effort to distance themselves from current narcotics trafficking.

9.      Detectives asked HARPER if he would step off the bus so they could further talk with him, and he agreed and voluntarily stepped off the bus.

Detectives then asked HARPER about the criminal history that he omitted when he was originally asked, and he provided a little more information on his criminal history.  Detectives asked if he had any guns or large amounts of money, and HARPER quickly denied having any.  Detectives asked him if he had any drugs, and he said no.  Detectives continued to ask about drugs, specifically asking him about heroin, cocaine, and other narcotics.  HARPER's nervous behavior appeared to increase—his voice became more shaky and he hesitated longer before answering some of the questions.  This behavior added to the Detectives' suspicion that he was smuggling narcotics.

10.     Detectives asked for consent to search his person, which HARPER provided.  When one of the detectives went to search him, the detective gave HARPER direction on how to stand when being searched; HARPER did not adhere to the directions, which further added to their suspicion of him.  The detective patted down HARPER's waistband area, upper leg, and hip area.  The detective used the blade of his hand to check HARPER's pants/buttocks area and immediately felt a large hard object approximately the size of a tennis ball.  In the detective's training and experience, the object appeared consistent with contraband.  The detective conducting the pat down grabbed HARPER's right arm to place him in handcuffs and other Detectives came to assist in handcuffing him.  HARPER attempted to resist and flee, however, was quickly and safely detained.

11.     HARPER was taken to the baggage ramp area of the bus station where he continued to deny having contraband.   After a short conversation, HARPER removed the suspected contraband, which turned out to be a baggie containing approximately 73 grams of suspected Fentanyl. In my training and experience, this amount of fentanyl exceeds an amount consistent with personal use, and is instead consistent with narcotics trafficking. A TruNarc scan on the contraband indicated Fentanyl Compound or Methamphetamine. Additionally, a Reagent field test was done on the substance, which indicated positive for Fentanyl.



## HARPER has the prior felony convictions

- April 2010 - Felony - Possession of drugs obtain/possess or use a controlled substance

- March 2012 - Felony - Trafficking in drugs

- March 2012 - Felony - Possession of drugs

## Conclusion

9.      Based on the above information, probable cause exists to believe that Robert James HARPER, violated 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute Controlled Substances.

Respectfully submitted,

Bradley Cioma, Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Honorable Curtis Ivy, Jr.
United States Magistrate Judge

Dated: ___June 25, 2021___